Bogie v. Nolan.

## BOGIE, *Appellant*, v. NOLAN, *Administrator.*

1. **Evidence**: DEPOSITION OF PARTY TO SUIT. The declarations of a party to a suit contained in his deposition taken by the other party may be read in evidence against him in the same case although he is present at the trial. (*Priest v. Way*, 87 Mo. 16, *overruled*).

2. ———: INVENTORY OF ESTATE: ADMINISTRATOR. Where, in an action against an administrator on promissory notes alleged to have been executed by the deceased, the plaintiff claims that he loaned the deceased shortly before her death and as part consideration for the notes, the sum of twenty thousand dollars, it is competent for the administrator, for the purpose of showing the deceased never received the money, to read in evidence the inventory of the assets of the estate and to show what property came into his hands as administrator.

3. ———: SPECIFIC OBJECTIONS. Where evidence is objected to *en masse* and without specific objections to it being stated, the supreme court will not review the action of the trial court thereon.

4. **Notes**: CONSIDERATION, PROOF AS TO. In an action on promissory notes alleged to have been executed by a decedent, the petition alleged the execution and a valuable consideration; the answer was a general denial and further stated the existence of a confidential relation between the decedent and the payee, and asked for strict proof of the consideration. *Held* that the proof of the notes made a *prima-facie* case upon the issue of consideration which required evidence in rebuttal on the part of the defendant, and the latter having presented said evidence, the recovery of plaintiff was dependent on the fact that there was a preponderance of the evidence in favor of the proposition that the notes were given for a valuable consideration.

5. ———: CONFIDENTIAL RELATION : BURDEN OF PROOF, Where one, during the existence of a confidential and intimate relation, executes notes to her physician, it is for the latter to show that no advantage was taken of the relation and that the transaction was fair.

*Appeal from Lafayette Circuit Court.*—HON. J. P. STROTHER, Judge.

AFFIRMED.

*Peak, Yeager & Ball* for appellant.

(1) Whatever defense a defendant intends relying on, he must set out in his answer. *Kersey v. Garton,* 77 Mo. 645 ; *Northrup v. Mississippi,* 47 Mo. 435 ; Bliss on Code Pleading, sec. 352. The court, therefore, committed error in refusing to give instructions numbered six, seven, eight, nine and ten, as asked by plaintiff. (2) The court also erred in giving instruction number one for defendant. The instruction is erroneous in placing on plaintiff the burden of proving the consideration of the notes, and that the decedent signed them with full knowledge of the character of the instrument. This was not a case of gift, as in the case of *Garvin v. Williams,* 44 Mo. 465, and like cases. (3) There was no evidence that plaintiff was a trusted adviser of the decedent, and for this reason and others instruction number five, given by the court of its own motion, was erroneous. (4) It was error for the court to admit in evidence the inventory filed by the administrator, purporting to show the amount of property which the decedent had on hand at the date of her death. *Coombs v. Coombs,* 86 Mo. 176. (5) The evidence of the witnesses Green and Baird, that they knew the decedent intimately and that they had never heard of her borrowing any money from plaintiff, was inadmissible. *Society v. East Sangatuck,* 53 Conn. 478 ; *Bates v. Forcht,* 89 Mo. 121. (6) Plaintiff's deposition was improperly read in evidence. *Priest v. Way,*

87 Mo. 16. (6) The court improperly excluded evidence offered by plaintiff tending to prove that he had money and was financially able to make the loans specified in the notes.

*R. H. Field* for respondent.

(1) Under a general denial in an action on a note, fraud, unsoundness of mind of the maker, and want of valuable consideration may be shown. *Corby v. Weddle,* 57 Mo. 452; *Cavender v. Waddingham,* 2 Mo. App. 551; *Evans v. Williams,* 60 Barb. 346; *Butler v. Edgerton,* 15 Ind. 15; *Goodenough v. Huff,* 53 Vt. 482. The petition, however, in this case averred that the notes were executed for a valuable consideration and cured any defect if it existed in the answer in that particular. *Hughes v. Carson,* 90 Mo. 399; *Nixon v. Beard,* 9 West. Rep. 658. The objection was still further waived by failure to object to the evidence on the point. *Ziekel v. Douglass,* 88 Mo. 382. (2) The burden of proof was upon the plaintiff to show that the notes in question were given for an adequate consideration, and that equity and perfect fairness characterized each transaction, because of the relationship of physician and patient, and confidence existing between him and Mrs. Dowling. *Cadwallader v. West,* 48 Mo. 494; *Street v. Goss,* 62 Mo. 221; *Garvin v. Williams,* 50 Mo. 211. (3) And plaintiff's exception to the refusal of his instructions, numbers six, seven, eight, nine and ten, is ineffectual unless each and every one of them should have been given by the court, because the record shows that he excepted to the refusal of all of them in a lump and not separately. *Sumner v. Blair,* 9 Kas. 521; *Bedwell v. Bedwell,* 77 Ala. 587; *Kilpatrick v. County,* 66 Ala. 422; *Magee v. Badger,* 34 N. Y. 247. (4) The court did not admit the inventory of the personal estate of Mrs. Dowling as independent evidence, nor as an inventory at all as alleged by counsel for appellant in point

four of their brief, but only as a part of the testimony of George N. Nolan, administrator, while on the witness-stand, and in so doing the court did not err. (5) The court did not err in admitting the testimony of Baird and Green. *Kinchloe v. Priest*, 89 Mo. 241; *Smalley v. Hale*, 37 Mo. 102; *Blue v. Penniston*, 27 Mo. 274. (6) The depositions of appellant were rightly read in evidence. ·No specific grounds of objection were made and his presence in court constituted no objection to them as evidence of his admissions and declarations. The decision in *Priest v. Way*, 87 Mo. 16, should be overruled. (7) The court did not err in excluding the testimony of French and Holman, because the simple fact of plaintiff's keeping a pocket-book in their vault for several years before the date of the alleged loans, did not rebut any evidence offered by defendant, and was an immaterial fact and might have drawn away the minds of the jurors from the real issue in the case. *Ritter v. Bank*, 87 Mo. 574.

BRACE, J.—In February, 1883, Mrs. Mary or May Dowling died in Kansas City possessed of real estate and personal property of the value of about twenty-five thousand dollars. The plaintiff, a practicing physician in that city, for several years prior and up to her death was her regular physician and medical attendant. Soon after her death the defendant, who was public administrator of Jackson county, took charge of her estate for administration, and thereafter, at the May term, 1883, of the probate court of said county, the plaintiff presented to said court, and procured to be allowed as demands against said estate, three promissory notes purporting to have been executed to him by the said Mary Dowling, one dated July 7, 1882, payable one year after date, for twelve thousand dollars, with twelve per cent. interest, one dated September 5, 1882, payable one year after date, for nine thousand dollars, with ten per cent.

interest, and one dated January 10, 1883, payable one day after date, for fourteen hundred dollars, with ten per cent. interest.

The orders allowing these notes as demands against said estate were afterwards set aside by the probate court, and the plaintiff instituted this suit on said notes against defendant, as administrator of the estate of the said Mary Dowling, in the circuit court of Jackson county, at Kansas City, from which a change of venue was taken to the circuit court of Lafayette county, where a trial was had, resulting in a verdict and judgment for defendant, from which plaintiff appeals. A reversal of the judgment is urged, on the ground that the trial court admitted illegal evidence for the defendant, rejected legal and competent evidence for the plaintiff, gave improper instructions for the defendant, and refused proper instructions for the plaintiff.

The petition contained three counts, one on each of said promissory notes, and each containing the allegation that on the date thereof the said Mary Dowling, for value received, executed and delivered the promissory note therein counted upon. The answer of the defendant contained a general denial of each and every allegation of the petition, or any knowledge or information thereof sufficient to form a belief, and an averment, in substance, that, from about the year 1875 to the time of her death, the plaintiff was the regular physician and medical attendant of the said Mary Dowling, and during all that period of time had the complete confidence and trust of the said Dowling in all things, and prayed the court to require of the plaintiff full proof that the said Mary Dowling executed said notes, and the consideration upon which they were based, if any. The reply admitted that plaintiff was the regular physician and medical attendant of Mary Dowling during the period of time specified in defendant's answer and denied the other allegations of the answer.

I.   In vacation before the trial, the defendant took
the deposition of the plaintiff and filed it in the cause,
and the plaintiff on the trial, when putting in his evi-
dence in chief, offered to read his deposition, to which
defendant objected, and the court sustained his objec-
tion, and refused to permit it to be then read.   When
the defendant came to put in his evidence, he offered to
read the same deposition as statements and admissions
of the plaintiff, to which plaintiff objected, "the said
Bogie being then present in court."   The court over-
ruled the objection and permitted the same to be read as
statements and admissions of the said Bogie.   On the
authority of *Priest v. Way*, 87 Mo. 16, it is contended
that the court committed error in permitting the decla-
rations of the plaintiff as contained in the deposition to
be read.   The parenthetical statement in the bill, "the
said Bogie being then present in court," cannot be con-
sidered as an assignment of that particular ground as an
objection to the admissibility of the evidence, and the
objection being general only, for that reason, under the
repeated rulings of this court, the plaintiff cannot insist
upon having the action of the trial court in this particu-
lar reviewed.   But as the question sought to be raised
can be gathered from the record without difficulty, and
as the ruling upon it in the above case by a divided
court was different from that in *Pomeroy v. Benton*, 77
Mo. 82, it is proper that another expression of the view
of this court upon the question should be given.

In the case last mentioned, the question was elabo-
rately discussed on principle and authority by SHER-
WOOD, J., in a dissenting opinion in which BLACK, J.,
concurred.   After a careful review of the authorities
and due consideration of the argument *pro* and *con.*, the
writer hereof has arrived at the same conclusion reached
by the learned judge in that opinion, *i. e.*, that the dec-
larations of a party to a suit, made in a deposition
taken by his adversary, may be read in evidence against

him on the trial, in the same suit in which such deposition was taken, whether he be present or absent; he is none the less a party because his adversary has called him as a witness; that the legislature, in conferring upon a party the right to call upon his adversary to testify, and in providing means by deposition to procure the evidence of witnesses who might not be able to be in personal attendance upon the trial, did not intend to narrow the scope of inquiry, for the very truth of the matter in controversy, by abrogating that ancient, well-recognized, and hitherto unquestioned rule of evidence, that the declarations of a party to the suit may be given in evidence against him—a rule that hitherto has had no respect for time or place, always presuming that a man's statements as against himself are truthful, whether made in court or out of court, on oath or in casual conversation, orally or in writing. They all rest on the same principle, that a man is not apt to declare a fact against his own interest unless it be true. In principle, there can be no difference in the character of this evidence, whether the declarations are made in the deposition of a party taken in his own case then on trial, his deposition taken in another case to which he was a party, or taken as a witness in a case in which he was not a party and had no direct interest. They are admissible in each case for the same reason, not as the deposition of a witness under the statute, but as the declaration of a party to the suit.

In harmony with this principle and with each other are the cases of *Kritzer v. Smith*, 21 Mo. 296; *Charleson v. Hunt*, 27 Mo. 34; *State ex rel. v. Bank*, 80 Mo. 626, and *Pomeroy v. Benton, supra.* The rule of evidence that makes these declarations admissible has not been trenched upon by the statute, nor can the deduction that it was so intended be fairly deduced from the terms used therein. If any mischief is likely to flow from its application to circumstances like those of the

present case, a remedy therefor must be found in future legislation. Nothing in the law as it is now written forbids it. The ruling on this question in *Priest v. Way, supra,* is disapproved. The full and satisfactory manner in which the subject is presented, and the authorities cited, in the dissenting opinion therein, obviates the necessity of a more elaborate discussion of the question in this case.

II. The administrator Nolan was examined as a witness, and testified that he took charge of the estate soon after Mrs. Dowling's death, that he made every effort to discover her estate, and made an inventory of all the personal property and money and notes belonging to her estate that he could find after diligent search and inquiry. He identified a paper then shown him as a true inventory thereof, and that it contained a list of all the personal property he could find belonging to her estate. Over the objections of the plaintiff, for the purpose of showing what personal property he succeeded in finding, the paper was permitted to be read to the jury, after which he was examined further and cross-examined. The plaintiff claimed that, within eight months before Mrs. Dowling's death, he loaned her over twenty thousand dollars in money, that went into the consideration of the notes sued on. A vital issue in the case was whether or not she received that money. A pertinent inquiry bearing on that issue was, if she received it, what did she do with it? If the administrator could show that she had never used any such sum of money, from the time she was alleged to have received it until her death, and neither the money nor anything representing it could be found among her assets, it was evidence tending to prove that she never received it. It was legitimate, then, to show what those assets were so far as they could be discovered. The administrator knew what they were, he gathered them

together and inventoried them.　That inventory he testified to as his evidence of what those assets were.　The fact that the names and amounts were read from the list made it none the less his evidence, and while this mode of presenting his evidence on that subject was perhaps irregular, it will not afford just ground for reversal.　It might be different if the paper had been offered as substantive and independent evidence of the facts therein contained.

III.　A series of questions and answers in the depositions of T. J. Green and F. G. Baird were objected to *en masse* without any specific ground of objection being assigned to any or all of them.　The action of the court in overruling these objections will not be reviewed.　*Parsons v. Railroad*, 94 Mo. 286.

IV.　On behalf of the plaintiff, the court gave three instructions, one on each count in the petition, instructing the jury to find for the plaintiff the amounts of the notes and interest sued on if they found from the evidence that plaintiff loaned Mary Dowling the sums of money therein mentioned and in consideration thereof she executed said promissory notes, and a fourth, that it did not devolve upon the plaintiff to show what disposition was made by her of the money, that it was only necessary for them to find that she received the money from the plaintiff as the consideration of the notes sued on.

On its own motion the court gave the following instruction : "The court instructs the jury that if they believe from the evidence that May, or Mary Dowling, deceased, signed and delivered the notes sued on to plaintiff, then the said notes import a consideration on their face, but not conclusively so ; and if the jury further believe from the evidence that, at the dates or times of delivery of said notes, the plaintiff was the family or personal physician of said Mary Dowling and her trusted adviser in whom she had confidence, then

the law devolves upon him the duty of proving the facts or circumstances from which the jury shall be satisfied of the fairness of the transaction, and that no undue advantage was taken of her therein, as to the amount of money loaned or any settlement of account, if any, which may have entered into the consideration for said notes, before he is entitled to recover therefor."

In behalf of defendant, among others not necessary to notice, the court gave the following instruction: "1. The jury cannot find a verdict for the plaintiff on either note, unless they are satisfied from the evidence of three things: ( a ) That the decedent signed the same with full knowledge of the character of the instrument; ( b ) that she delivered the same; ( c ) that the same was based on a valuable consideration, actually received by her.     And the jury are instructed that fondness or esteem are not a valuable consideration.   In the absence of either of these three things, the verdict must be for the defendant."

The court refused to give five instructions asked by plaintiff, three of which, one on each count in the petition, were to the effect, that if the jury found that Mary Dowling executed the notes sued on, the burden of proving a want of consideration devolved upon the defendant, and unless they found from a preponderance. of the evidence that there was no consideration paid by plaintiff for the notes they will find for the plaintiff as to each of them, and one to the effect that the failure of plaintiff to list and return all his property to the assessor for taxation would not vitiate the notes if Mrs. Dowling executed them.   The other is as follows:

" 6.   The court instructs the jury that it is not sufficient in this case to invalidate said notes, or either of them, upon the ground of undue influence, by simply showing that the relations of physician and patient, and friendship and confidence existed between plaintiff and said Mary Dowling, but defendant must show by a preponderance of evidence to the satisfaction of the jury,

that plaintiff had the confidence of said Mary Dowling to such an extent and degree that he could and did exercise control and dominion over the mind and actions of said Mary Dowling, and that it was under such control, dominion and undue influence unlawfully and wrongfully exercised over and upon said Mary Dowling by plaintiff that she executed said notes."

The issue tendered in the petition was that the decedent, for a valuable consideration, executed the notes sued on. The answer by general denial joined these issues and further stated a confidential relation between the maker and payee and required strict proof of the execution and consideration. Ordinarily, in actions on promissory notes, the execution and promise is alone counted upon. In this case, however, the plaintiff not only averred the execution of the notes, but that the decedent executed them for value, and these were the issues upon which the case was tried. The evidence of the plaintiff tended to prove that Mary Dowling executed the notes and that the consideration thereof was money loaned in the amounts and at the dates therein respectively stated. The evidence of the defendant tended to prove that she did not execute the notes and never received any consideration therefor. There was no question as to what the consideration was; if decedent received any, it was money loaned, or its equivalent, and treated as such by both parties.

The burden of proving that she executed the notes and received the consideration alleged was on the plaintiff, and as there was conflicting evidence on both issues, it remained on him on the whole evidence to satisfy the jury, by a preponderance thereof, that decedent executed the notes for that valuable consideration. We find no error in the action of the circuit court in refusing to instruct the jury that if they found the decedent executed the notes, the burden of proof was upon the defendant to satisfy the jury by a preponderance of the

evidence that there was no consideration therefor. The proof of the execution of the notes made a *prima-facie* case upon the issue of consideration, which called upon the defendant for evidence in rebuttal, and when that evidence was introduced, the plaintiff's recovery depended upon a preponderance of the evidence in favor of his affirmative proposition, that the notes were given for a valuable consideration. Abbott's Trial Ev. 404; *Delano v. Bartlett*, 6 Cush. 364; *Small v. Clewley*, 62 Me. 155; *Powers v. Russell*, 13 Pick. 76; *Heinemann v. Heard*, 62 N. Y. 448.

The refused instruction, to the effect that plaintiff's failure to return all his property to the assessor would not vitiate the notes sued on, was unnecessary to be given to an intelligent jury, was obnoxious as a comment on the evidence, and there was no error in refusing it.

The court, in the instruction given on its own motion, and in number one, given for the defendant, in effect told the jury, that in order to find for plaintiff they must find from the evidence that Mrs. Dowling, knowing at the time the character of the instruments, signed and delivered the notes sued on, and actually received a valuable consideration therefor, and if they find that she signed and delivered the notes, then they are to be presumed to have such consideration, but not conclusively, and if they find that, at the time of their execution, the plaintiff was the physician of said Mary Dowling, and her trusted adviser in whom she had confidence, then it devolved on the plaintiff to show that she did receive the alleged consideration therefor and that no undue advantage was taken of her. These instructions, while they may be subject to some verbal criticism, declared the law of the case in such terms as that the jury could not have failed to make a proper application of the correct legal principles they contained to the evidence in the case, by which they are well sustained. The uncontroverted evidence was that, at the

time these notes purport to have been executed, the decedent was a childless widow aged about fifty-five or sixty years, living in Kansas City, without relatives or personal friends near or about her; that she was the owner of real estate of the value of about eighteen thousand dollars, yielding rent, and of about eight thousand dollars in money and notes, and about four hundred dollars worth of other personal property; that she was engaged in no business, living upon the income derived from the rent of her real estate, and the interest derived from her money loaned; that for many years prior to her death she had been addicted to the habitual use of intoxicants, the habit growing stronger, and the indulgence more frequent and excessive as the years went by, accompanied by the use of narcotics at intervals, resulting, as was inevitable, in the last year or so of her life, in the impairment of her health, a marked change in her mental characteristics and in the character of her associates; that during all these years of her physical, mental and social decline, from the influence .of this pernicious habit, up to the time of her death, · some eight months after the date of the first of the series of notes sued on, the plaintiff was her constant regular physician and medical attendant; that his ministrations, as such, to her necessities during the period covered by the dates of these notes, were so frequent that, according to his testimony, his bill for such services between the first of July and the fifth of September, 1882, the date of the second note, was about one hundred and fifty dollars; that during all these years she placed the utmost confidence and trust in him, not only as her physician, but as a man and a friend, and towards the last he seems to have been the only one with whom she was intimately associated, on terms of friendship and esteem.

To hold, as the circuit court did, that, under these circumstances, it was incumbent on the plaintiff to show

that the notes of the decedent, purporting to have been executed to him during the pendency of these confidential relations by his patient, were founded upon a valuable consideration ; that she understood the transaction, and that it was fair and just, and that no advantage was taken of her, is in harmony with a sound principle of public policy well established by many authorities. *Cadwallader v. West*, 48 Mo. 483 ; *Garvin's Adm'r v. Williams*, 50 Mo. 206 ; *Yosti v. Laughran*, 49 Mo. 594 ; *Street v. Goss*, 62 Mo. 226 ; *McClure v. Lewis*, 72 Mo. 314. In 1 Story's Equity Jurisprudence, section 312, quoting the language of Judge Sharswood, it is said : " When the relation of solicitor and client exists, and a security is taken by the solicitor from his client, the presumption is that the transaction is unfair and the *onus* of proving its fairness is upon the solicitor." And in section 314, it is further said : " Similar considerations apply to the case of a medical adviser and his patient; for it would be a meagre sort of justice to say that the sort of policy which has induced the court to interfere between client and attorney should be restricted to such cases ; since as much mischief might be produced, and as much fraud and dishonesty practiced, if transactions were permitted to stand between parties in equally confidential relations."

It is for the physician to show that the transaction in which he received valuable securities from his patient during the existence of this intimate and confidential relation was fair, and that no advantage was taken of that relation, in the teeth of a presumption to the contrary growing out of the fact of its existence. And unless he does so show the courts will not lend their assistance to enforce such securities against the patient, although he or his representative may not show the actual exercise of undue influence in procuring them. The action of the court in giving and refusing the instructions set out was in harmony with this principle,

and for its action in this behalf the case ought not to be reversed.

V. The depositions of French and Holman contained no evidence bearing materially upon any controverted point in the case, direct or collateral, and the refusal of the court to permit them to be read could not in any manner have affected the result.

The verdict on the evidence was inevitable, the judgment is for the right party, ought to be and is affirmed. All concur except RAY, J., absent. NORTON, C. J., who adheres to the ruling in *Priest v. Way, supra,* concurs in the opinion in other respects.